Howard L. Jacobs, State Bar No. 149709
howard.jacobs@athleteslawyer.com
Katlin N. Freeman, State Bar No. 316253
katy.freeman@athleteslawyer.com
Law Offices of Howard L. Jacobs
31111 Agoura Rd., Suite 225
Westlake Village, CA  91361
(805) 418-9892
(805) 418-9899 facsimile

R. Daniel Fleck, Admission Pro Hac Vice Pending
THE SPENCE LAW FIRM, LLC
15 South Jackson Street
P.O. Box 548
fleck@spencelawyers.com
Jackson, Wyoming 83001
Telephone:	(307) 733-7290
Facsimile:	(307) 733-5248

*Attorneys for Mohamed Samy*

# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMED SAMY, an individual,<br><br>    Plaintiff,<br><br>vs.<br><br>ENHANCED ATHLETE INC., a Nevada corporation; and DOES 1-30, inclusive,<br><br>    Defendants.. | Case No.<br><br>**COMPLAINT FOR DAMAGES FOR (1) NEGLIGENCE (2) STRICT PRODUCTS LIABILITY (3) BREACH OF IMPLIED WARRANTY; (4) INTENTIONAL MISREPRESENTATION; (5) NEGLIGENT MISREPRESENTATION; and (6) BREACH OF CONTRACT** |

MOHAMED SAMY, for his Complaint against ENHANCED ATHLETE INC., a Nevada corporation; and DOES 1-30, inclusive, states as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Mohammed Samy is, and at all material times was, a resident of Cairo, Egypt.

2. Upon information and belief, defendant ENHANCED ATHLETE INC. (hereinafter "Enhanced Athlete") is, and at all material times was, a Nevada corporation, organized and existing under the laws of the State of Nevada, with its principal place of business located in Sacramento, California; is authorized to do business in the State of California; and is transacting business within this judicial district.

3. Plaintiff brings this action pursuant to 28 U.S.C. §1332. Plaintiff is a citizen and resident of Cairo, Egypt; defendant is a Nevada corporation having its principal place of business in Sacramento, California; and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. This Court has personal jurisdiction over Defendants because Defendants have, directly or through their intermediaries (including distributors, retailers, and others), developed, licensed, manufactured, shipped, distributed, offered for sale, sold and advertised its nutritional supplement products in the United States, the State of California and this district, including but not limited to, the Blue Ox product and/or other products containing ostarine. Defendant has purposefully and voluntarily placed these products into the stream of commerce with the expectation that they will be purchased in this district.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(1).

6. The true names and capacities of defendants sued herein under Section 474 of the Code of Civil Procedure as Does 1-30, inclusive, are presently unknown to Plaintiff. Plaintiff is informed and believes, and upon such information and belief, alleges that each of the defendants designated herein as fictitiously named defendants are in some way, manner or form, and to some extent responsible for the acts, events and happenings hereinafter alleged and referred to, and that each of these defendants in some way, manner or form and to some extent caused detriment, damage and injury to Plaintiff as hereinafter alleged. At the time Plaintiff ascertains the precise basis of liability, and the true names and capacities of fictitiously named defendants, Plaintiff will seek leave to amend this complaint by setting forth the same. Wherever appearing in this complaint, each and every reference to "defendants" is intended to be, and shall be, a reference to all defendants in this action, and to each of them, including all fictitiously named defendants.

7. Plaintiff is informed and believes that each and every act, event and happening hereinafter alleged to have been done, caused, suffered, allowed and permitted by defendants, or any of them, was

done, caused, suffered, allowed and permitted by each and every defendant in his, her or its representative of each and every other defendant.

**FACTS COMMON TO ALL CAUSES OF ACTION**

8. Plaintiff repeats and realleges all of the allegations in paragraphs 1 through 7 of this complaint as though each were set forth and alleged herein in full.

9. Defendant ENHANCED ATHLETE INC., and DOES 1-30, and each of them, manufactured and sold nutritional supplements under the brand names "Enhanced Athlete," "Enhanced Labs," and "Enhanced." One of the nutritional supplements that was manufactured and sold by Defendants, and each of them, was Enhanced "Blue Ox". Defendants represented Enhanced "Blue Ox" to "contain[s] 9 naturally derived pharmaceutical grade ingredients to increase the body's own natural testosterone production without the use of dangerous pharmaceuticals," and that "all of the ingredients in Blue Ox have been scientifically verified in human studies". Defendants further represented that "Enhanced Lab products undergo extensive laboratory testing to ensure that our customers receive only the best quality substances at the proper concentration, potency, and purity. We take pride in the extensive research that goes into every product, sourcing only the finest and most innovative ingredients," including the Enhanced Blue Ox capsules.

10. At all material times, Plaintiff Mohamed Samy was a world class, internationally ranked swimmer.

11. Starting on June 8, 2022, and up to and including June 16, 2022, Mr. Samy consumed 4 Enhanced Blue Ox capsules on a daily basis, in accordance with the provided instructions for use and recommended dosages. Prior to June 2022, Mr. Samy had never used any Enhanced Athlete supplements, and had never used any supplements manufactured or sold by defendants. Plaintiff researched Enhanced Athlete supplements, and satisfied himself through his research that Enhanced Blue Ox capsules did not contain any substances that were banned and/or prohibited from use in Olympic swimming.

12. Prior to purchasing or taking Enhanced Blue Ox capsules, Mohamed Samy read literature on Enhanced Athlete and its products. With respect to Enhanced Blue Ox capsules, Mohamed Samy reaffirmed the product use with his colleagues and read the label, which did not list any substances banned for Olympic swimming. Mr. Samy also contacted the manufacturer through a chat function on the Enhanced Athlete website, obtaining assurance that the product was "WADA compliant." Each source

confirmed that the product was appropriate for Plaintiff's needs and endorsed the consumption of it as safe and free from any substance that could disqualify him from competition, including, but not limited to, the anti-doping regulations of the Fédération Internationale de Natacion ("FINA"), the World Anti-Doping Agency ("WADA"), and the International Olympic Committee ("IOC"). Plaintiff took these precautions to ensure compliance with all of the regulations governing his sport.

13. As an elite swimmer, Plaintiff Mohamed Samy was subject to regular drug testing by FINA, WADA, and the IOC. This drug testing was required both in competition and out of competition (on a random, no-notice basis). On June 16, 2022, Plaintiff Mohamed Samy provided an out-of-competition urine sample for testing by the relevant anti-doping authorities (hereinafter "Samy urine sample") in Budapest, Hungary. According to normal collection procedures, the Samy urine sample was divided into an "A" sample and a "B" sample, and then sealed in tamper-proof containers.

14. The Samy urine sample was analyzed in the WADA-accredited laboratory in Seibersdorf, Austria (hereinafter "Seibersdorf"). Seibersdorf reported that the "A" sample of Plaintiff's urine sample contained the prohibited substances ostarine and S23. This finding was later confirmed by Seibersdorf through the testing of the "B" sample of Plaintiff's urine sample.

15. Ostarine and S23 are the trademarked names for selective androgen receptor modulators ("SARM"), a class of therapeutic compounds with similar properties to anabolic agents, which is not approved for human use in the United States or any other country. The sanction when an athlete tests positive for a banned substance such as a SARM include, but is not limited to, suspension from competition for up to four years.

16. As a result of testing positive for banned substances, Plaintiff Mohamed Samy was suspended from competition, as set forth below.

17. On or about February 27, 2023, FINA and Mohamed Samy agreed to an 18-month sanction in relation to Mr. Samy's positive urine test for ostarine and S23. Mohamed Samy was suspended from competition for the period from June 20, 2022 through December 19, 2023.

18. As a result of his suspension, Mohamed Samy missed many important competitions, including but not limited to, the FINA Short Course World Championships; and suffered a loss of income derived from triathlon-related grants, sponsorships, endorsements and competitions. Furthermore, Plaintiff's reputation is permanently tarnished.

COMPLAINT FOR DAMAGES

19. On or about July 11, 2022, Mohamed Samy sent a sample of Enhanced Blue Ox capsules to Korva Labs for testing for possible contamination with ostarine and/or S23. The sample of Enhanced Blue Ox capsules was received by Korva Labs on or about July 13, 2022. On or about July 19, 2022, Korva Labs reported that the Enhanced Blue Ox capsules was contaminated with ostarine and S23; this was the first time Mohamed Samy had ever learned that Blue Ox could be contaminated with ostarine and S23.

20. Subsequently, a sealed/un-opened box of the "Blue Ox" supplement was sent to the WADA-accredited Laboratory in Salt Lake City, Utah ("Utah Laboratory"). On or about September 30, 2022, the Utah Laboratory reported that the capsules of the "Blue Ox" supplement in the sealed /un-opened box were contaminated with ostarine and S23.

21. As a direct result of his exposure to ostarine and S23 in Enhanced Labs products, Mr. Samy has suffered economic and non-economic damages as more fully set out below under "Damages."

## FIRST CAUSE OF ACTION FOR NEGLIGENCE
## (AGAINST ALL DEFENDANTS)

22. Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 21 of this Complaint as though each are set forth and alleged herein in full.

23. At all times relevant to this Complaint, Defendants, and each of them, engaged in the business of manufacturing, marketing, distributing, and selling Enhanced Blue Ox capsules to athletes and the general public.

24. At all times relevant to this Complaint, Enhanced Blue Ox capsules, a product contaminated with unlabeled substances, was distributed and sold to stores, in and around southern California, and elsewhere throughout the United States and around the world. Enhanced Blue Ox capsules were made available to athletes and the general public who consumed it in a manner intended by Defendants at the time of its sale.

25. At the time Enhanced Blue Ox capsules were produced, distributed, and sold by Defendants, and each of them, Defendants owed a duty to exercise reasonable care and caution in the production of its products and in the subsequent distribution and sale of those products to athletes and the general public to ensure that those products were safe, wholesome, and otherwise fit for consumption by competitive athletes and the general public.

26. Notwithstanding the aforementioned duties, Defendants, and each of them, were negligent and failed to exercise ordinary care in performing their duties to Plaintiff. Such negligent acts and omissions include, but are not limited to the following:

   a. Carelessly and negligently failed to properly maintain the production facility in that during the production process, Enhanced Blue Ox capsules was allowed to become contaminated with ostarine and S23;

   b. Carelessly and negligently failed to monitor the production of Enhanced Blue Ox capsules, although they knew, or should have known, of the existence of contamination;

   c. Carelessly and negligently offered products contaminated with ostarine and S23 for sale to athletes;

   d. Carelessly and negligently failed to shut down their production facility although they knew, or should have known, of the existence of the contamination;

   e. Carelessly and negligently failed to warn athletes of the contamination in Enhanced Blue Ox capsules as heretofore described;

   f. Carelessly and negligently failed to design a safe manufacturing process that would have eliminated the possibility of cross contamination in products;

   g. Carelessly and negligently failed to adequately test supplements;

   h. Carelessly and negligently failed to provide accurate information for product users to make informed decisions;

   i. Carelessly and negligently failed to adequately clean machinery;

   j. Carelessly and negligently failed to adhere to industry standards;

   k. Carelessly and negligently failed to adhere to government regulations in manufacturing Enhanced Blue Ox capsules;

   l. Carelessly and negligently allowed improper methods of operation; and

   m. Carelessly and negligently failed to disclose known dangers.

27. At the time and place of the events described herein, Defendants, and each of them, owed a duty of reasonable care to Plaintiff to avoid causing injury to Plaintiff.

28. As a direct and proximate result of the acts and omissions of Defendants, and each of them, Plaintiff suffered injuries. As a consequence of these injuries, Plaintiff have sustained damages as more specifically detailed in the section of this Complaint denominated as "Damages".

## SECOND CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY
## (AGAINST ALL DEFENDANTS)

29. Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 28 of this Complaint as though each are set forth and alleged herein in full.

30. At all times relevant to this Complaint, Defendants, and each of them, were in the business of manufacturing, processing, distributing, and selling the above-mentioned products for consumption by athletes.

31. At all times relevant to this Complaint, Enhanced Blue Ox capsules was manufactured, processed, and distributed by Defendants, and each of them, and placed into the stream of commerce and sold at stores, to Plaintiff and the general public, while Enhanced Blue Ox capsules were contaminated with ostarine and S23.

32. Plaintiff ingested the contaminated product, Enhanced Blue Ox capsules, doing so in a manner that was reasonably foreseeable and intended by Defendants, and each of them, at the time the product was manufactured, processed, distributed, and sold to Plaintiff.

33. Prior to and at the time of the occurrence described above, the product Enhanced Blue Ox capsules was defective for its intended use in one or more of the following respects:

    a. Enhanced Blue Ox capsules was contaminated with ostarine and S23;

    b. No warning was given to Plaintiff or the general public that the product contained ostarine and S23, or was otherwise unfit for consumption;

    c. The instructions provided by Defendants for Enhanced Blue Ox capsules failed to advise or inform any and all foreseeable users, such as Plaintiff, of the hidden dangers that would arise from a reasonably anticipated use of Enhanced Blue Ox capsules.

34. One or more of the foregoing conditions made Enhanced Blue Ox capsules unreasonably fit, suitable, or safe for its intended purpose because it failed to contain or provide adequate warnings, labeling or instructions, namely that Enhanced Blue Ox capsules contained ostarine and S23.

COMPLAINT FOR DAMAGES

Furthermore, Defendants, and each of them, knew or reasonably should have known of this condition at that time.

28. Defendants, and each of them, failed to act in a reasonably prudent manner in marketing Enhanced Blue Ox capsules or in providing any warnings on the label of Enhanced Blue Ox capsules or on the website regarding the contents of the product.

36. Furthermore, Defendants, and each of them, manifested a knowing and reckless indifference toward, and a disregard for the rights of athletes and consumers to make informed decisions about the products that they purchase and consume. Defendants, and each of them, failed to accurately disclose the supplement ingredients on the label.

37. As a proximate result of one or more of the foregoing defective conditions, making this product unreasonably fit, suitable or safe for its intended use when this product left the control of Defendants, and each of them, Plaintiff ingested the contaminated product and sustained injuries. As a consequence of these injuries, Plaintiff have sustained damages as more specifically detailed in the section of this Complaint denominated as "Damages".

## THIRD CAUSE OF ACTION FOR BREACH OF IMPLIED WARRANTY
## (AGAINST ALL DEFENDANTS)

38. Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 37 of this Complaint as though each are set forth and alleged herein in full.

39. At all times hereinafter mentioned, Defendants, and each of them, owed to Plaintiff a warranty that good shall be merchantable; and fit for the ordinary purposes for which such goods are used; and conform to the promises or affirmations of fact made on the container or label.

40. Enhanced Blue Ox capsules was represented to "contain 9 naturally derived pharmaceutical grade ingredients to increase the body's own natural testosterone production without the use of dangerous pharmaceuticals." Further, Enhanced Blue Ox capsules were purported to be "WADA compliant."

41. Notwithstanding the aforementioned warranty, Defendants, and each of them, manufactured and sold the product, which was unfit for consumption as the product was contaminated with both ostarine and S23.

42. As a consequence of the injuries resulting from Defendants' breach of implied warranty, Plaintiff have sustained damages. These damages are all of those allowed at law, including actual, incidental and consequential damages.

**FOURTH CAUSE OF ACTION FOR INTENTIONAL MISREPRESENTATION**

**(AGAINST ALL DEFENDANTS)**

43. Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 42 of this Complaint as though each are set forth and alleged herein in full.

44. Defendants, and each of them, intentionally and recklessly misrepresented the following material facts regarding the quality and contents of Enhanced Blue Ox capsules:

    a. Defendants, and each of them, failed to disclose that Enhanced Blue Ox capsules contained ostarine and S23;

    b. Defendants, and each of them, falsely represented that Enhanced Blue Ox capsules "contain 9 naturally derived pharmaceutical grade ingredients to increase the body's own natural testosterone production without the use of dangerous pharmaceuticals" when, in fact, Enhanced Blue Ox capsules did contain both ostarine and S23 which were not disclosed on the product labeling.

    c. Defendants, and each of them, falsely represented that Enhanced Blue Ox capsules were "WADA compliant" when, in fact, Enhanced Blue Ox capsules did contain both ostarine and S23 which were not disclosed on the product labeling.

    d. Defendants, and each of them, falsely represented that Enhanced Blue Ox capsules "all of the ingredients in Blue Ox have been scientifically verified in human studies". Defendants further represented that" when, in fact, Enhanced Blue Ox capsules did contain both ostarine and S23 which were not disclosed on the product labeling.

    e. Defendants, and each of them, falsely represented that "Enhanced Lab products undergo extensive laboratory testing to ensure that our customers receive only the best quality substances at the proper concentration, potency, and purity. We take pride in the extensive research that goes into every product, sourcing only the finest and most innovative ingredients" when, in fact, Enhanced Blue Ox capsules did contain both ostarine and S23 which were not disclosed on the product labeling.

45. Upon information and belief, Defendants, and each of them, knew that the facts of such representation were not true; and made these representations with the intention of misleading potential customers as to the actual content of Enhanced Blue Ox.

46. The misrepresentations made by Defendants, and each of them, were made contrary to duties imposed under common law, and by Federal and State statutory obligations.

47. The contents of Enhanced Blue Ox capsules, namely that they contained ostarine and S23, were a direct and proximate cause of the injuries and damages suffered by Plaintiff.

48. Except for Defendants' representations regarding the label, safety, purity, appropriateness and quality of Enhanced Blue Ox capsules, Plaintiff would never have purchased or used it.

49. Defendants, and each of them, knew that the product, Enhanced Blue Ox capsules, was contaminated with ostarine and S23.

50. At all times relevant to this Complaint, Enhanced Blue Ox capsules were distributed and were sold to competitive athletes and consumers, who consumed the product in the manner intended by defendants at the time of the product's manufacture and sale.

51. At the time consumers, including Plaintiff, purchased Enhanced Blue Ox capsules, they did so in reliance upon defendants' representations made directly through defendants, through and at their facilities or through websites, representatives, signs, advertising and labeling. These representations were made in such a manner that Plaintiff and other consumers heard or otherwise believed that Enhanced Blue Ox capsules were safe or otherwise fit for consumption.

52. At the time the representations were made, they were untrue, as the product was not reasonably safe or otherwise fit for consumption by the Plaintiff or other consumers.

53. At the time Plaintiff purchased Enhanced Blue Ox capsules, Defendants, and each of them, made or permitted untrue representations about the quality and contents of Enhanced Blue Ox capsules to be made. Upon information and belief, Defendants made these representations recklessly, knowing that the product Enhanced Blue Ox contained ostarine and S23.

54. Plaintiff, relying on and believing the representations made by and on behalf of Defendants, and each of them, consumed Enhanced Blue Ox capsules.

55. As a direct and proximate result of Plaintiff reliance on Defendants' untrue representations, Plaintiff consumed the contaminated product Enhanced Blue Ox capsules and suffered injuries. As a

COMPLAINT FOR DAMAGES

consequence of these injuries, Plaintiff has sustained damages as more specifically detailed in the section of this Complaint denominated as "Damages".

## FIFTH CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION
## (AGAINST ALL DEFENDANTS)

56. Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 55 of this Complaint as though each are set forth and alleged herein in full.

57. Defendants, and each of them, negligently and recklessly misrepresented the following material facts regarding the quality and contents of Enhanced Blue Ox capsules:

    a. Defendants, and each of them, failed to disclose that Enhanced Blue Ox capsules contained ostarine and S23;

    b. Defendants, and each of them, falsely represented that Enhanced Blue Ox capsules "contain 9 naturally derived pharmaceutical grade ingredients to increase the body's own natural testosterone production without the use of dangerous pharmaceuticals" when, in fact, Enhanced Blue Ox capsules did contain both ostarine and S23 which were not disclosed on the product labeling.

    c. Defendants, and each of them, falsely represented that Enhanced Blue Ox capsules were "WADA compliant" when, in fact, Enhanced Blue Ox capsules did contain both ostarine and S23 which were not disclosed on the product labeling.

    d. Defendants, and each of them, falsely represented that Enhanced Blue Ox capsules "all of the ingredients in Blue Ox have been scientifically verified in human studies". Defendants further represented that" when, in fact, Enhanced Blue Ox capsules did contain both ostarine and S23 which were not disclosed on the product labeling.

    e. Defendants, and each of them, falsely represented that "Enhanced Lab products undergo extensive laboratory testing to ensure that our customers receive only the best quality substances at the proper concentration, potency, and purity. We take pride in the extensive research that goes into every product, sourcing only the finest and most innovative ingredients" when, in fact, Enhanced Blue Ox capsules did contain both ostarine and S23 which were not disclosed on the product labeling.

58. These misrepresentations were made under circumstances in which Defendants, and each of them, either knew, or in the exercise of reasonable care should have known, that the facts of such representations were not true or were not known to be true.

59. The misrepresentations made by Defendants, and each of them, were made contrary to duties imposed under common law, and by Federal and State statutory obligations.

60. The contents of Enhanced Blue Ox capsules, namely that they contained ostarine and S23, were a direct and proximate cause of the injuries and damages suffered by Plaintiff.

61. Except for Defendants' representations regarding the label, safety, purity, appropriateness and quality of Enhanced Blue Ox capsules, Plaintiff would never have purchased or used it.

62. Defendants, and each of them, knew or through the exercise of reasonable care should have known that the product, Enhanced Blue Ox capsules, was contaminated with ostarine and S23.

63. At all times relevant to this Complaint, Enhanced Blue Ox capsules were distributed and were sold to competitive athletes and consumers, who consumed the product in the manner intended by defendants at the time of the product's manufacture and sale.

64. At the time consumers, including Plaintiff, purchased Enhanced Blue Ox capsules, they did so in reliance upon defendants' representations made directly through defendants, through and at their facilities or through websites, representatives, signs, advertising and labeling. These representations were made in such a manner that Plaintiff and other consumers heard or otherwise believed that Enhanced Blue Ox capsules were safe or otherwise fit for consumption.

65. At the time the representations were made, they were untrue, as the product was not reasonably safe or otherwise fit for consumption by the Plaintiff or other consumers.

66. At the time Plaintiff purchased Enhanced Blue Ox capsules, Defendants, and each of them, made or permitted untrue representations about the quality and contents of Enhanced Blue Ox capsules to be made. Defendants either knowingly or recklessly made such representations, knowing the lack of sufficient knowledge upon which to base such representation.

67. Plaintiff, relying on and believing the representations made by and on behalf of Defendants, and each of them, consumed Enhanced Blue Ox capsules.

68. As a direct and proximate result of Plaintiff reliance on Defendants' untrue representations of Defendants, Plaintiff consumed the contaminated product Enhanced Blue Ox capsules and suffered injuries. As a consequence of these injuries, Plaintiff has sustained damages as more specifically detailed in the section of this Complaint denominated as "Damages".

## DAMAGES

69. Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 68 of this Complaint as though each are set forth and alleged herein in full.

70. At the time and place of the events described herein, the Defendants, and each of them, owed a duty of reasonable care to the Plaintiff to avoid causing injury to the Plaintiff.

71. As a direct and proximate result of the acts and omissions of Defendants, and each of them, Plaintiff has suffered injuries. Said injuries include, but are not limited to, physical contamination and intrusion of Plaintiff's body, including contamination with dangerous substances that are harmful to Plaintiff, injuring him in such a way as to not be able to complete his duties and job as a professional competitor. Plaintiff's injuries also include the loss of once-in-a-lifetime opportunities and of Plaintiff's reputation. As a consequence of these injuries, Plaintiff has incurred the following damages, in amounts to be proven at trial:

   a. Physical harm as a result of Plaintiff's ingestion of dangerous substances that have been considered at all material times by the United States Food and Drug Administration to be "adulterated products" within the meaning of 21 U.S.C. §342(f), to be proven at trial;

   b. Depression, panic attacks, and psychological harm, to be proven at trial;

   c. Damage to Plaintiff's "other property," in that as a direct and proximate result of the acts and omissions of Defendants, and each of them, Plaintiff's professional license, which is a property right that is separate from the Enhanced Blue Ox capsules product that Plaintiff' purchased, was suspended;

   d. Loss of past income and earning capacity in an amount to be proven at trial;

   e. Loss of income and earning capacity which Plaintiff can reasonably be expected to have enjoyed in the future in an amount to be set forth at trial;

   f. Past and future pain, suffering and humiliation in an amount to be set forth at trial; and

   g. Loss of enjoyment of life, past and future, in an amount to be set forth at trial.

**WHEREFORE**, Plaintiff prays the judgment, order and decree of this Court be as follows:

1. Judgment for Plaintiff against Defendants, and each of them, for general damages in an amount consistent with the allegations contained herein and to be proven at trial.

2. Judgment for Plaintiff against Defendants, and each of them, for special damages in an amount consistent with the allegations contained herein and to be proven at trial.

3. Judgement for Plaintiff against Defendants, and each of them, for punitive damages in an amount consistent with the allegations contained herein and to be proven at trial.

4. Judgement for Plaintiff against Defendants, and each of them, for reasonable attorneys' fees where applicable in an amount consistent with the allegations contained herein and to be proven at trial.

5. Judgement for Plaintiff against Defendants, and each of them, in an amount as supported by the allegations in this Complaint and the evidence adduced at trial, that Plaintiff be awarded the costs of suit incurred herein, and that Plaintiff be awarded such other costs and relief as the court deems just and equitable.

DATED: June 8, 2023 LAW OFFICES OF HOWARD L. JACOBS

/s/ Howard L. Jacobs
Howard L. Jacobs
Attorneys for Petitioner MOHAMED SAMY